IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED,<br><br>  Plaintiffs,<br>v.<br><br>HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK,<br><br>  Defendant. | Case No. 7:23-mc-00469<br><br>CASE PENDING IN DISTRICT OF COLUMBIA:<br>Civil Action No. 1:21-cv-02900-CJN |

**MEMORANDUM OF LAW IN SUPPORT OF
OAN'S MOTION TO COMPEL THIRD PARTY GEORGE SOROS
TO COMPLY WITH RULE 45 SUBPOENA**

Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN") files this Motion to Compel Third Party George Soros to Comply with Rule 45 Subpoena. OAN served on George Soros ("Soros") a document subpoena in a matter pending in the United States District Court for the District of Columbia captioned *Smartmatic USA Corp. et al. v. Herring Networks, Inc.*, No. 1:21-cv-02900-CJN (D.D.C.) (the "Action"). The subpoena was issued on July 6, 2023. Soros served his objections on August 10, 2023, conceding that certain requests were relevant and agreeing to produce documents responsive to OAN's requests. To date, however, Soros has failed to produce any documents, and OAN's attempts to come to an agreement have been stonewalled. The requested documents are material and necessary to OAN's defenses against defamation claims brought by Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic"). OAN is thus forced to move this Court for an order compelling Soros to produce documents pursuant to the Rule 45 document subpoena.

1

## I.   INTRODUCTION

Soros refuses to search for or produce any documents in his possession related to his affiliation with Smartmatic. Despite having this subpoena since July 10, Soros has failed to produce documents in response to OAN's subpoena, even on issues he concedes are relevant. OAN provided Soros with a set of merely 4 search strings after meeting and conferring with Soros's counsel. Nevertheless, Soros refuses to timely comply with the document subpoena or even begin producing documents responsive to these four narrow search queries. Nor has Soros provided any evidence of his burden other than his bare assertions that these 4 search strings are burdensome.

OAN therefore requests that this Court order Soros to produce, within one week of the Court's order, documents that are responsive to OAN's document subpoena and proposed search terms.

## II.   BACKGROUND

Smartmatic sued OAN, a family-run media outlet, for over a billion dollars in damages, based in part on statements it alleges to be defamatory regarding connections between Smartmatic and George Soros ("Soros") and other Soros entities, including his Open Society Institute (also known as Open Society Foundations) ("Open Society"). *See, e.g.*, Complaint, ECF No. 1, ¶¶ 41, 93, 95–97, 99, 102, 104–105, 111, 113, 129, 131, 171, 184, 194, 196, 218, 227. Although OAN maintains that Smartmatic's well-documented connections to Soros and his entities are not defamatory, Smartmatic has put this connection at issue and these statements are therefore material to the claims and defenses in this action. OAN is therefore necessarily entitled to explore the veracity of these statements that Smartmatic claims are somehow defamatory.

Smartmatic's complaint refers extensively to OAN's statements in various broadcasts and headlines that Soros is a multi-billionaire who has contributed financially to a variety of "left wing" organizations and causes—including through his fundraising network, Open Society. Complaint

¶ 131, *Smartmatic USA Corp. v. Herring Networks, Inc.* (D.D.C.); *see id.* ¶¶ 93, 95–96, 97, 99, 104–105, 111, 113, 129, 184, 194, 196, 218, 227.[1] Many of the complained-of statements alleged by Smartmatic to be defamatory concern Smartmatic's, and in particular its former Chairman Lord Mark Malloch-Brown's, links to political actors on the left, including Soros and Open Society.

Malloch-Brown was Chairman of Smartmatic's parent company from 2014 to December 2020 and previously held positions in Soros's Quantum Fund and Soros Fund Management, LLC. Malloch-Brown had a decades-long personal and business relationship with George Soros going back at least to 2005. And throughout Malloch-Brown's entire tenure as Chairman of Smartmatic, Malloch-Brown simultaneously served as a member of the Global Board of Directors of George Soros's Open Society and was a close personal friend of George and his son, Alex Soros. Their relationship was so close that within weeks of the 2020 presidential election, and amidst the coverage of Smartmatic that is at issue in this case, Malloch-Brown resigned the chairmanship of Smartmatic to become President of Soros's Open Society, where he continues to serve as President to this day.

Despite these connections stretching back nearly a decade, Smartmatic alleges to be defamatory a segment broadcast by OAN during which the following exchange transpired:

> Ms. McKinney: Foreign governments seem to be tied in with these [Smartmatic voting] systems, whether it be Canada, Venezuela, Spain, or even Germany. What can you tell us about that?
>
> Mr. Johns: [T]here's been some reporting in some of these systems in Germany were actually seized. [] *Smartmatic has had incredible ties with some of the greater far left concerns that we have, including this Lord Mark Malloch-Brown, who's very tight with Soros, is on the Open Society's Global Board and a bunch of other Soros boards, meaning this is not some casual associate of George Soros*. This is

---

[1] *See also* Joe Schoffstall, *Soros Bankrolls Dark Money Hub for Activists Pushing to Dismantle Police, Grants Show*, FOX NEWS (Dec. 9, 2021), https://www.foxnews.com/politics/soros-bankrolls-dark-money-hub-activists-dismantle-police [https://perma.cc/97MM-98L4].

In August 2023, OAN served a document subpoena, issued on July 31, 2023, on the Open Society, which is represented by the same counsel as Soros. (**Ex. C**, Document Subpoena to Open Society.)

3

> kind of an individual is part of that inner circle. And we have case after case[.] Philippines is another great example where these systems have been utilized and there's been nothing but broad concerns. Now, since we last talked, which was not broadly known and still not broadly known, ***just so happens that one of the two campaigns has a very strong relationship with Smartmatic*** and I probably don't have to ask you to guess which one.

Complaint ¶ 93, *Smartmatic USA Corp. v. Herring Networks, Inc.* (D.D.C.) (first alteration and italics added).

And this is just one example of a statement Smartmatic alleges to be defamatory regarding the relationship between Soros, Open Society, and Smartmatic. Indeed, Smartmatic's 193-page complaint is replete with references to Soros and his work. For instance, another complained-of broadcast alleged in Smartmatic's complaint contained the following excerpt, connecting Soros to Smartmatic, Venezuela, and Hugo Chavez:

> Mr. Dinow: ***Report suggests voting machines systems funded by George Soros were used to install a socialist regime in Venezuela back in the early 2000s.*** According to WikiLeaks, UK based companies Smartmatic had a campaign staffer for Hugo Chávez on its board back in 2000. ***Now the company reportedly meddled with a 2004 Venezuela election to secure a win for the Chávez regime.*** The Gateway Pundit reports, Smartmatic sold its technology to Dominion Voting, that ran elections in Arizona, Michigan, Nevada, and Pennsylvania this year.

*Id.* ¶ 95. Another provides:

> Ms. Kokalari-Angelakis: [T]hey have been around since 2004, at least in Serbia. Dominion and the Clinton Foundation, they have a project together called the Delian Project, which apparently raises money to help voter fairness in countries like, I don't know, maybe Albania or countries that are not–don't have a strong economy or they're not too strong. Meanwhile, they are doing the opposite, so, you know, when you see weak states like those, this is the perfect playground for George Soros because, believe it or not, George Soros' son is constantly in Albania. Albanians are friends of Hillary Clinton and the Clinton Foundation, but, remember this: in 2016, right before the election in 2016, Hillary Clinton was so sure she was going to win. The only reason she was sure she was gonna win, is because they knew Dominion and the software, Smartech–Smartmatic was in existence, and that's how they were going to get the election. They just didn't expect–they didn't realize how many Americans were going to vote for Donald Trump, and that's how they probably lost that election.

*Id.* ¶ 104 (emphasis omitted). And yet another of Smartmatic's allegations of defamation concerns the following statement regarding Malloch-Brown's relationship with Soros and his organizations:

> OANN Reporter: Chairman Mark Malloch Brown sits on the board of George Soros' Open Society Foundation, which has a revenue of more than $300 million and has reportedly given away billions of dollars to left wing organizations around the world. Malloch-Brown has also served as Vice Chairman of Soros' investment funds. Meantime, Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela, on behalf of embattled socialist President Nicolás Maduro.

*Id.* ¶ 131.

Similar references to Soros and his organizations abound throughout the complaint. *See, e.g.*, *id.* ¶¶ 41, 93, 95–97, 99, 102, 104–105, 111, 113, 129, 131, 171, 184, 194, 196, 218, 227. Taken as a whole, the complained-of statements alleged in the complaint broadly connect Soros and Open Society to Smartmatic and claims of voter fraud.

OAN's subpoena to Soros, issued on July 6, 2023, seeks documents responsive to 23 requests for production. (**Ex. B**, Document Subpoena to Soros.)[2] Soros's counsel accepted service on behalf of Soros on July 10, 2023. (**Ex. F**, Email Exchange dated July 10, 2023 re Service & Extensions). OAN extended Soros's deadline to object to the subpoena to August 7, 2023. (*Id.*) On July 28, Soros asked for a second extension, and OAN in turn extended the deadline to August 10. (*Id.*) Soros served his Responses and Objections on August 10, 2023. (**Ex. D**, Soros's Responses and Objections).

In his Reponses and Objections, Soros stated his intention not to search for any documents responsive to 18 of the 23 requests but only to search for and produce documents responsive to the remaining 5 requests insofar as they related to what Soros deemed the "Relevant Issues" in the Action. (*Id.* at 16–17, 26–27, 33–34.) The "Relevant Issues," according to Soros, consist of: "(i)

---

[2] OAN's subpoena satisfied Rule 45's form, content, notice, and geographic requirements. Fed. R. Civ. P. 45(a)–(c).

5

statements regarding the 'links' between Smartmatic and Mr. Soros—namely, the undisputed fact that Lord Mark Malloch Brown, Chairman of Smartmatic's parent company, SGO, was at one point a board member of the Open Society Foundations Global Board," provided that OAN can "demonstrate" to Soros that the link was disputed by Smartmatic;[3] and "(ii) statements concerning Mr. Soros's alleged funding or ownership of Smartmatic." (*Id.* at 2.) Soros also lodged a number of boilerplate objections.

By September 19, 2023, Soros had not produced any documents, despite promising to search for and produce those he deemed "related to the Relevant Issues." *See* (*id.* at 2); (**Ex. A**, Shah Decl. ¶¶ 4–5). With a fact-discovery deadline approaching, counsel for OAN sought a meet and confer. (**Ex. A**, Shah Decl. ¶ 5.) OAN and counsel for Soros conferred by telephone on September 27. *See* (*id.* ¶ 6); (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.) During the conference, counsel agreed that OAN would send search terms so as to help avoid undue burden for Soros in complying with the requests. *See* (Ex. A, Shah Decl. ¶ 6.) Moreover, OAN informed Soros that it was aware of documents related to Soros's advancement and support of Smartmatic's business opportunities. (*Id.*)

On October 16, 2023, following up on the agreement reached in the telephone conference, OAN sent a list of four, narrow search queries to assist Soros's identification and production of responsive documents. (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.); *see* (**Ex. H**, OAN's Proposed Search Terms). OAN asked that, in the event Soros found the search queries too broad, he demonstrate the burden "by identifying how many responsive documents these [proposed] terms hit on." (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.) Having received no response, OAN a week later requested a second meet-and-confer telephone

---

[3] In other words, Soros insists he should not have to produce other documents to OAN related to Smartmatic because Soros's connection to Smartmatic through Malloch-Brown and Open Society is publicly known.

conference. (*Id.*) Counsel for Soros finally responded via email on October 24, asking for an explanation of the nature of 14 of the terms and their relevance. (*Id.*) OAN explained in detail each of the 14 terms and their relevance, supporting this with citations of the complained-of statements in the Smartmatic complaint, and further re-iterated OAN's request for a second telephonic conference. (*Id.*)

Another week passed. (*Id.*) On November 8, Soros's counsel responded, declining to run OAN's proposed search terms, stating that the four search queries "contain more than 2,500 search terms." (*Id.*) OAN in turn explained it was "happy to work with you to narrow our search term proposal" but found it difficult to understand "how our proposal of 4 search strings can result in 2,500 terms." (*Id.*) OAN requested more information, specifically in the form of a hit report, so that OAN could "work to narrow" the terms and identify the cause of the numbers. (*Id.*) OAN also pointed out that Soros had already conceded the relevance of certain inquiries. (*Id.*)

On November 17, Soros's counsel responded, retreating from Soros's statement in the Responses and Objections that he would search for and produce "materials related to the Relevant Issues" (**Ex. D**, Soros's Responses and Objections at 16–17, 26–27, 33–34), and taking the new position that the *none* of the discovery sought is relevant. (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.) Additionally, Soros's counsel asserted that OAN's four search queries actually amounted to "more than 2,500 individual searches" when the Boolean connector "and" is taken into account. (*Id.*) Soros's counsel did not provide any evidence of this other than this bare assertion, nor did counsel provide any hit reports as requested by OAN and instead insisted that no "further discussion about search terms is appropriate or productive at this stage." (*Id.*)

To date, Soros has not produced any documents, including those he initially conceded as relevant. (**Ex. A**, Shah Decl. ¶¶ 4, 12.) OAN therefore has no other choice but to bring this Motion and seek this Court's relief.[4]

### III.     LEGAL STANDARD

Rule 45 allows the party serving a subpoena to move "for an order compelling production" of requested documents if the commanded person has failed to comply. Fed. R. Civ. P. 45(d)(2)(B)(i). The decision whether to grant a motion to compel compliance with a Rule 45 subpoena is entrusted to this Court's sound discretion. *See In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (per curiam). "[S]ubpoenas issued under Rule 45 are 'subject to the relevance requirement of Rule 26(b)(1),' which provides that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Malibu Media, LLC v. Doe*, No. 15-CV-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) (second alteration in original) (quoting *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011)). "[A]lthough not unlimited, relevance, for the purposes of discovery, is an extremely broad concept." *A.I.A. Holdings S.A. v. Lehman Bros.*, No. 97CIV.4978 (LMM)(HBP), 2000 WL 763848, at *2 (S.D.N.Y. June 12, 2000). "Thus, the Rule 26(b)(1) standard presents a 'relatively low threshold' for a party

---

[4] As "the district where compliance is required," the Southern District of New York is the proper forum for this Motion. The document subpoena was addressed to Soros's residential address in Katonah, New York, and the subpoena directs production at the White Plains, New York, offices of a court reporter. (**Ex. B**, Document Subpoena to Soros); *see* Fed. R. Civ. P. 45(c)(2)(A) ("A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person [possessing such documents] resides, is employed, or regularly transacts business in person.").

As Rule 45 provides, "the serving party may move the court for *the district where compliance is required* for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added). A Rule 45 subpoena requires compliance in the location where it directs production. *See, e.g.*, *Madigan v. Bronstein*, No. 18 Misc. 61 (WHP), 2018 WL 1768283, at *3 (S.D.N.Y. Apr. 12, 2018) ("[A]ny motion to compel would properly be brought in the Eastern District of New York—not this Court—because the subpoena requires attendance at a deposition and production of documents in Brooklyn."); *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016). Therefore, OAN properly files the Motion in this Court to compel compliance with the document subpoena.

8

to show that the material sought is relevant to any claim or defense in the litigation." *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quotation omitted).

Once relevancy has been shown, the subpoena respondent resisting discovery bears the burden of demonstrating that the subpoena is "over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Services, Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 CIV. 5560 (RMB)HBP, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery." (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011))). Whether a subpoena imposes upon a witness an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quoting *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

Because the burden is on the subpoena respondent withholding discovery, the respondent "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citing *Concord Boat*, 169 F.R.D. at 48). Defeating a motion to compel requires showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Sokol*, 2008 WL 3166662, at *3 (alterations in original) (quoting *Compagnie Francaise*

*D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *see also Alexander v. FBI*, 194 F.R.D. 305, 313–15 (D.D.C. 2000) (noting that party alleging undue burden "must make a specific, detailed showing of the burden [the disputed] search would require" and identifying "estimated required staff hours, estimated cost, or some other specific showing" as types of evidence that might support an undue burden argument).

## IV.  ARGUMENT

### A. Soros is required to produce documents that are relevant and necessary to OAN's defense of Smartmatic's lawsuit.

In his responses and objections to the subpoena, Soros agreed to search for and produce certain documents. Yet Soros has produced zero documents—not even documents responsive to the very requests he conceded are relevant (Request Nos. 1–2, 11–12, and 19). There is no reason why Soros cannot immediately produce such documents now and produce the methodology he used for locating these documents he concedes are responsive. Additionally, the Court should overrule Soros's objections and order production of documents responsive to all of the requests.

OAN's requests are relevant because they concern documents that bear on the substantial truth of the statements complained of in Smartmatic's complaint, Smartmatic's damages claims, and OAN's defenses. The document subpoena seeks 23 relevant categories of information, all of which relate to the claims at issue in Smartmatic's lawsuit against OAN. (**Ex. B**, Document Subpoena to Soros, at 6–9.)

The complaint broadly discusses, among other things, Soros's and Open Society's ties with Smartmatic and their connections with Venezuela, Albania, Chavez, Maduro, Castro, socialist regimes, and Dominion, *see* Complaint ¶¶ 41, 93, 95–97, 99, 102, 104–105, 111, 113, 129, 131, 171, 184, 194, 196, 218, 227, *Smartmatic USA Corp. v. Herring Networks, Inc.* (D.D.C.); the sale of Smartmatic election technology to Dominion, *see id.* ¶¶ 131, 196; Soros or Open Society's

10

advancement and support of Smartmatic's business, *see id.* ¶¶ 95–96, 105, 184, 196, 218, 227; the ownership of Smartmatic and Soros's involvement, *see id.* ¶¶ 97, 99, 218; the development of Smartmatic's software and Soros, *see id.* ¶¶ 95, 99, 113, 184, 196, 218, 227; Soros's and Open Society's relationships with Malloch-Brown and Smartmatic, *see id.* ¶¶ 41, 93, 111, 131, 171; Malloch-Brown's relationship to Soros's investment funds, *see id.* ¶¶ 131; voter or other election-related fraud due to Soros's and Open Society's influence on Smartmatic, *see id.* ¶¶ 93, 95–96, 99, 102, 104, 111, 113, 171, 184, 194, 218, 227; and Soros's and Open Society's relationships with left-wing organizations, causes, and politicians and their influence on elections, *see id.* ¶¶ 93, 95–96, 97, 99, 104–105, 111, 113, 129, 131, 184, 194, 196, 218, 227. Overall, Smartmatic's complaint mentions "Open Society" or "Soros" nearly 60 times. *See* (**Ex. A**, Shah Decl. ¶ 2).

OAN must be permitted to test and defend against Smartmatic's defamation claims, and in order to do so, is entitled to all the evidence that is relevant to Smartmatic's claims and OAN's defenses. Information relating to the above topics is plainly discoverable and "could lead to evidence that would undermine plaintiffs' claims." *See Int'l Bhd. of Teamsters v. Eastern Conf. of Teamsters*, 162 F.R.D. 25, 29 (S.D.N.Y. 1995) (ordering third parties to comply with subpoenas because documents requested "may be relevant to . . . the accuracy of plaintiffs' claim" and "could lead to evidence that would undermine plaintiffs' claims"). Soros cannot show that the evidence OAN seeks is irrelevant or has no bearing on the "veracity of plaintiff's allegations." *See Palacio v. City of New York*, No. 04-cv-01990-RJH-DFE, 2008 WL 7453608, at *5 (S.D.N.Y. Nov. 19, 2008) (defendant was entitled to discover information relevant to, and fully examine, "the veracity of plaintiff's allegations"); *see also Price v. Viking Press, Inc.*, 113 F.R.D. 585, 587 (D. Minn. 1986) ("[E]vidence concerning any 'general disdain for truth and accuracy with respect to plaintiff and the subject matter of the defamation is probative' and should be discoverable." (quoting

11

Lackland H. Bloom, Jr., *Proof of Fault in Media Defamation Cases*, 38 Vand. L. Rev. 247, 278 (1985)).

Soros cannot re-define the "relevant issues" in this action as a third party. Soros's narrow definition of the relevant issues in this matter is contradicted by Smartmatic's very complaint, which alleges that 18 statements by OAN concerning Soros, Open Society, and Smartmatic are defamatory. (**Ex. A**, Shah Decl. ¶ 2). Nor can Soros refuse to produce documents bearing on his connection to Smartmatic through Malloch-Brown simply because aspects of that relationship were publicly known. To the contrary, OAN is entitled to all evidence that is relevant to Smartmatic's claims and OAN's defenses, including evidence bearing on the full extent of Smartmatic's entanglement with Soros and Open Society, and Malloch-Brown's use of that relationship for Smartmatic's benefit. *See Palacio*, No. 04-cv-01990-RJH-DFE, 2008 WL 7453608, at *5.

Despite the relevance of OAN's requests, Soros attempts to rest on his laurels based on a ruling in a completely different case, against different parties, concerning different challenged statements, and in a different forum. During OAN's conferral efforts, Soros's counsel indicated that Soros's successful defense to a motion to compel a subpoena in a New York state court lawsuit against defendants Fox Corporation and Fox News Network LLC means that Soros is not obligated to comply with the subpoena in *this* case. *See* (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer); *Smartmatic USA Corp. v. Fox Corp.*, Index No. 151136/2021 (N.Y. Sup. Ct. N.Y. Cty. filed Feb. 4, 2021). The difference in this action, however, is that challenged statements connecting Smartmatic and Soros and his organizations permeate Smartmatic's complaint, whereas the complaint in *Fox Corporation* references only six unique statements made by the defendants concerning Soros or Open Society. *Compare* Complaint ¶¶ 126, 157(b), 166(o), 166(v),

234(d), 244, *Fox Corp.*, Index No. 151136/2021 (N.Y. Sup. Ct. N.Y. Cty. filed Feb. 4, 2021) *with* Complaint, ECF No. 1, *Smartmatic USA Corp. v. Herring Networks, Inc.*, No. 1:21-cv-02900-CJN (D.D.C. filed Nov. 3, 2021) (59 hits for "Soros" or "Open Society"). In Smartmatic's complaint against OAN, "Soros" appears in 13 unique statements alleged to be defamatory, *see* Complaint ¶¶ 93, 95–97, 99, 102, 104, 105–06, 113, 129, 131, 171(cc); and "Open Society" appears in 5 unique statements, *see id.* ¶¶ 93, 99, 111, 131, 171(cc). (**Ex. A**, Shah Decl. ¶ 2). The number of unique statements concerning Soros or Open Society in this lawsuit is *triple* that of Fox's lawsuit.

Not only are the challenged statements in this action quantitatively more numerous than the statements in *Fox Corporation*, but also they are substantively different. They include different statements from different hosts, different guests, and different broadcasts. And of course, OAN's subpoena is different than Fox's subpoena to Soros. Moreover, the case in *Fox Corporation* is not governed by federal law, and the federal rules of evidence on relevance and burden. This case necessarily stands on its own, and Soros's reliance on a state court ruling in different matter is inapposite. Soros must comply with OAN's subpoena.

**B.  Soros's unsupported burden objections do not outweigh OAN's need for this information.**

Soros identifies no evidence of the purported burden he asserts, despite OAN requesting evidence of this purported burden—specifically hit reports—during the meet-and-confer process and in correspondence with Soros's counsel. *See* (**Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.) Soros's perfunctory objections cannot surmount the "heavy burden" a subpoena respondent faces in order to successfully resist a subpoena, *Kirschner*, 2005 WL 1214330, at *2 (quoting *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)), and the Court should disregard Soros's unsupported assertions of burden. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (CM) (JCF), 2017 WL 3822883, at *4 (S.D.N.Y. Aug. 30, 2017) (non-party

13

respondent from whom discovery is sought "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance" (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009))).

OAN's proposed search queries are narrowly tailored to capture documents responsive to the requests and only concern Smartmatic or its agents. OAN's proposal consists of four search queries that all fit on one page. (**Ex. H**, OAN's Proposed Search Terms). The suggestion of Soros's counsel that "break[ing] . . . out" the search queries "amounts to more than 2,500 individual searches [OAN] ha[s] asked us to run" due to the operations of the "'and' connector" misapprehends the nature of a Boolean search and, more importantly, vastly inflates the burden imposed on Soros. (*See* **Ex. G**, Email Exchange dated Sept. 19, 2023 re Meet & Confer.) The Boolean search operator "and" permits a subpoena respondent to narrowly tailor a search for responsive documents by eliciting hits only where the document meets multiple criteria and hits on multiple terms, thus *decreasing* the number of hits, and increasing the likelihood that the search yields relevant and narrowly tailored documents. Soros's counsel has furthermore not even identified the particular terms he considers problematic or contributing to the alleged 2,500 search terms "when broken out" but has rejected all of OAN's search terms outright without even a counterproposal. Nor has Soros's counsel provided evidence to OAN of these purported 2,500 terms, despite OAN's request for this evidence. Contrary to the representation of Soros's counsel, OAN's proposed search terms require just four simple queries to be run—not 2,500 individual searches.

Absent evidence of the burden of running four individual searches—such as hit reports— Soros's claims of undue burden are meritless. Despite OAN's efforts, Soros to this date has refused

to provide any evidence of the purported burden on which he is relying in part to not produce documents. (**Ex. A**, Shah Dec. ¶¶ 10–11); *In re In-Store Advertising Sec. Lit.*, 163 F.R.D. 452, 455 (S.D.N.Y. 1995) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence.") (quoting *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994)); *Johnson v. McTigue*, 122 F.R.D. 9, 11 (S.D.N.Y. 1986) ("Mere allegations of burdensomeness cannot defeat a motion to compel production."); *see also Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924(CFD)(WIG), 2008 WL 11377696, at *9 (D. Conn. June 10, 2008) (rejecting undue-burden argument where non-party subpoena respondent's "assertions of undue burden are totally unsupported by affidavit or any other evidence giving any estimate of the number of documents involved or the expense of complying with the subpoena").

In determining whether an undue burden exists, courts can consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345AJNKHP, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). These considerations weigh against sustaining Soros's objection to the document subpoena.

Smartmatic seeks billions of dollars in this case, a factor that alone justifies OAN's relevant, targeted subpoena to a third party that is mentioned all over the Complaint. *See BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) (finding no undue burden for non-party to comply with defamation defendant's subpoena given the amount in controversy); *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 767 (D.C. Cir. 1965) ("The fact that

these are very important cases with large sums of money at stake is relevant in determining the reasonableness of the [third-party] subpoena.").

Moreover, the complaint's numerous (nearly 60) references to Soros and Open Society's connections with Smartmatic and claims of election-related fraud demonstrate the importance of the discovery in resolving Smartmatic's claims and OAN's defenses. *See* (**Ex. A**, Shah Decl. ¶ 2). So does the number of unique complained-of statements involving Open Society and Soros—18 in total. *See* (*id.*); Complaint ¶¶ 93, 95–97, 99, 102, 104, 105–06, 111, 113, 129, 131, 171(cc).

Finally, Soros's resources *vastly* outstrip those of OAN. *See George Soros*, FORBES (Dec. 1, 2023) (identifying Soros's net worth as $6.7 billion), https://www.forbes.com/profile/george-soros/?sh=6bba26cc2024 [https://perma.cc/ALY5-S8L6]. The so-called "burden" of an individual with Soros's means in complying with a one page search term proposal is negligible.

The remainder of Soros's boilerplate objections should likewise be disregarded. *See Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'[G]eneral objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered." (citing *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008))); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavors them.").

### C. The Court should award OAN its attorneys' fees incurred in connection with enforcement of the subpoena.

Under Federal Rule of Civil Procedure 45(g), a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). It is well-established that federal courts have the inherent power to punish for contempt. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *see also PaineWebber Inc.*

*v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002), ("The Court has the power under this [R]ule [45] to impose contempt simply on the basis of failure to comply with a subpoena."). Following the issuance of a contempt finding, the Court may award attorneys' fees to the moving party. *See, e.g.*, *Bulkmatic Transport Co., Inc. v. Pappas*, No. 99-cv-12070, 2001 WL 504839 (RMB) (JCF), at *3 (S.D.N.Y. May 11, 2001).

Soros's noncompliance with the subpoena warrants an award of attorneys' fees in OAN's favor. Soros is a multi-billionaire who has forced OAN, a small family-run media outlet, to incur expenses engaging in a fruitless meet-and-confer process that Soros has used to simply delay and refuse compliance. Soros misrepresented that he would search for and produce certain documents. *See* (**Ex. A**, Shah Decl. ¶ 4). He never did so. (*Id.* ¶ 12.) OAN has now been forced to engage in the filing of a new miscellaneous action in this Court and to engage in motion practice to secure Soros's compliance and obtain relevant, responsive documents. The fact that Soros rejected all of OAN's search terms outright without even a counterproposal, or a demonstration of the purported burden, is probative of Soros's bad faith. *See* (*id.* ¶¶ 10–11). Soros should thus be required to pay OAN's attorneys' fees incurred in bringing this motion. *See, e.g.*, *NXIVM Corp. v. Bouchey*, No. 1:11-MC-0058 GLS/DEP, 2011 WL 5080322, at *5 (N.D.N.Y. Oct. 24, 2011) (exercising inherent authority and finding clear and convincing evidence of non-party's bad-faith, including "repeated efforts to avoid compliance with the subpoena," to award petitioner "the costs, including a reasonable attorney's fee, associated with the preparation, filing, and argument of the instant motion for contempt").

\* \* \*

The stonewalling must end. Soros's failure to comply with OAN's subpoena has forced OAN to seek judicial relief. OAN is entitled to information pertaining to the veracity of statements

Smartmatic alleges are defamatory involving Soros. This information bears on the substantial truth of the statements complained of in Smartmatic's complaint, are necessary to OAN's defense, and are material to challenging Smartmatic's and damages claims. OAN therefore asks the Court to enter an order compelling Soros to produce documents responsive to the document subpoena no later than 7 days after the granting of this Motion and to award attorneys' fees.

## V. CONCLUSION

The Court should render an order compelling Soros to produce documents responsive to the document subpoena no later than 7 days after the granting of this Motion and award OAN reasonable attorney's fees.

By: */s/ Joel Glover*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
NY Bar No. 5451117
Joel R. Glover
NY Bar No. 5697487
John K. Edwards
(motion for admission *pro hac vice* to be filed)
Bethany Pickett Shah
(motion for admission *pro hac vice* to be filed)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
jglover@jw.com
jedwards@jw.com
bpickett@jw.com

*Counsel for Defendant*