**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-02900-CJN-MAU |
| v. | ) ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) ) | |
| Defendant. | ) ) | |
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:23-mc-00138-CJN |
| v. | ) ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| GEORGE SOROS, | ) | |
| Respondent. | ) | |

**CONSOLIDATED REPLY IN SUPPORT OF OAN'S MOTIONS TO COMPEL
THIRD PARTIES GEORGE SOROS AND OPEN SOCIETY INSTITUTE
TO COMPLY WITH RULE 45 SUBPOENAS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT .................................................................................................................1

    A.    OAN's requests are relevant to this litigation – Respondents cannot dictate how OAN chooses to defend itself in a lawsuit seeking billions of dollars in damages..................................................................................................................1

        1.    OAN's requests are relevant. ...................................................................... 1

        2.    Respondents should not be permitted to self-servingly redefine Smartmatic's complaint and circumscribe OAN's defenses. ..................... 2

        3.    Respondents' reliance on unrelated litigation against a different defendant has no bearing here.................................................................... 8

    B.    Respondents have not made a showing of undue burden in complying with OAN's subpoena. ..................................................................................................10

    C.    OAN is entitled to attorneys' fees.........................................................................15

III.    CONCLUSION............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. FBI*,
   194 F.R.D. 305 (D.D.C. 2000)...................................................................................10, 11, 12

*Ass'n of Am. Physicians & Surgeons v. Clinton*,
   837 F. Supp. 454 (D.D.C. 1993) ..............................................................................10, 11, 12

*Black v. Sheraton Corp. of America*,
   47 F.R.D. 263 (D.D.C. 1969)..........................................................................................8, 9

*In re Denture Cream Prods. Liab. Litig.*,
   292 F.R.D. 120 (D.D.C. 2013).................................................................................8, 10, 12

*Pleasants v. Allbaugh*,
   208 F.R.D. 7 (D.D.C. 2002)...............................................................................................10

*Smartmatic USA Corp. et al. v. Fox Corp. and Fox News Network LLC*,
   Index No. 151136/2021 (N.Y. Sup. Ct. N.Y. Cty. filed Feb. 4, 2021) ....................8, 9, 11, 16

*Smartmatic USA Corp. v. Herring Networks, Inc.*
   (D.D.C. filed Dec. 5, 2023) (motion to compel Soros filed in S.D.N.Y. and
   later transferred to D.D.C.) ......................................................................................1, 7, 14

*Smartmatic USA Corp. v. Herring Networks, Inc.*,
   No. 1:21-cv-02900-CJN-MAU (D.D.C. filed Dec. 5, 2023) ......................................... *passim*

**Statutes**

N.Y. C.P.L.R. § 3101(a)(4)................................................................................................8

**Rules**

Fed. R. Civ. P. 26..........................................................................................................8, 9

Fed. R. Civ. P. 26(b)(1).....................................................................................................9

Local Civil Rule 26.2(d) ..................................................................................................14

**Other Authorities**

*Fact Sheet: The Open Society Foundations and George* Soros, OPEN SOC'Y
   FOUNDS. (Oct. 12, 2023)..............................................................................................12

*George Soros*, FORBES (Dec. 1, 2023) ...............................................................................12

## I.    INTRODUCTION

Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN") files this consolidated reply in support of its Motions to Compel Third Parties George Soros ("Soros") and Open Society Institute, also known as Open Society Foundations ("Open Society" or, collectively, "Respondents"), to Comply with Rule 45 Subpoenas.[1]

Soros and Open Society's consolidated response ("Response")[2] is littered with mischaracterizations, light on caselaw, and ultimately underscores the highly relevant nature of OAN's document requests. Moreover, the Response is devoid of *any* evidence supporting Soros and Open Society's burden objections. As a result, OAN's Motions should be granted, and the Court should enter an order compelling the production of documents responsive to the subpoenas *duces tecum* within 7 days of the Court's order.

## II.    ARGUMENT

### A.    OAN's requests are relevant to this litigation – Respondents cannot dictate how OAN chooses to defend itself in a lawsuit seeking billions of dollars in damages.

#### 1.    *OAN's requests are relevant.*

As OAN explained in its Motions, the information it seeks from Respondents goes to the heart of the allegations in this case. *See* ECF No. 2 at 10–13, No. 1:23-mc-00138-CJN (Soros Motion); ECF No. 126-1 at 12–15 (Open Society Motion).

---

[1] ECF No. 1, No. 1:23-mc-00138-CJN, *Smartmatic USA Corp. v. Herring Networks, Inc.* (D.D.C. filed Dec. 5, 2023) (motion to compel Soros filed in S.D.N.Y. and later transferred to D.D.C.) (hereinafter "Soros Motion");[1] ECF No. 126, *Smartmatic USA Corp. v. Herring Networks, Inc.*, No. 1:21-cv-02900-CJN-MAU (D.D.C. filed Dec. 5, 2023) (motion to compel Open Society filed in main action) (hereinafter "Open Society Motion"); *see also* Minute Order (Dec. 21, 2023) (granting Open Society and Soros's request for extension of time and consolidated briefing).

[2] ECF No. 167.

Smartmatic's complaint extensively discusses Respondents' ties to Smartmatic, including with respect to (1) connections with Venezuela, Albania, Chavez, Maduro, Castro, socialist regimes, and Dominion (ECF No. 1, Complaint ¶¶ 41, 93, 95–97, 99, 102, 104–105, 111, 113, 129, 131, 171, 184, 194, 196, 218, 227); (2) the sale of Smartmatic election technology to Dominion (*id.* ¶¶ 131, 196); (3) the advancement and support of Smartmatic's business (*id.* ¶¶ 95–96, 105, 184, 196, 218, 227); (4) the ownership of Smartmatic (*id.* ¶¶ 97, 99, 218); (5) the development of Smartmatic's software (*id.* ¶¶ 95, 99, 113, 184, 196, 218, 227); (6) Soros's and Open Society's relationships with Lord Mark Malloch-Brown and Smartmatic (*id.* ¶¶ 41, 93, 111, 131, 171); (7) Malloch-Brown's relationship to Soros's investment funds (*id.* ¶ 131); (8) voter or other election related fraud due to Soros's and Open Society's influence on Smartmatic (*id.* ¶¶ 93, 95–96, 99, 102, 104, 111, 113, 171, 184, 194, 218, 227); and (9) Soros's and Open Society's relationships with left-wing organizations, causes, and politicians and their influence on elections (*id.* ¶¶ 93, 95–96, 97, 99, 104–105, 111, 113, 129, 131, 184, 194, 196, 218, 227).

Respondents appear *60 times* throughout Smartmatic's complaint. To argue that the information Respondents possess is still not relevant to this litigation is without merit.

    2.    *Respondents should not be permitted to self-servingly redefine Smartmatic's complaint and circumscribe OAN's defenses.*

Contrary to their belief otherwise, Soros and Open Society do not get to decide which statements are and are not alleged to be defamatory. *See* Response at 12–20. Smartmatic's complaint expressly incorporates all of the foregoing statements referencing Soros and Open Society[3] as part of an alleged "disinformation campaign" that Smartmatic states "as a whole" implied to OAN's viewers that "Smartmatic participated in a criminal conspiracy to fix, rig, and steal the 2020 U.S. election." *Id.* ¶¶ 441, 456 (incorporating by reference paragraph 171); *see id.*

---

[3] Complaint ¶¶ 93, 95–97, 99, 102, 104–06, 111, 113, 129, 131, 171(cc).

¶ 171 (identifying as part of the "disinformation campaign" each of the segments or chyrons that broadcast the allegedly defamatory statements referencing Soros and Open Society). OAN contests this allegation, but it has a right to defend itself against these claims without a third party circumscribing how OAN may litigate its defenses. The Court should not countenance Soros and Open Society's attempt to reframe the complaint to suit their own goal and withhold responsive and relevant documents.

Nor has Smartmatic—which has had every opportunity to intervene and object to these subpoenas—suggested this requested information is irrelevant. Rather, Smartmatic's own conduct in this action further demonstrates the relevance of this information. Smartmatic itself has produced documents and agreed to the stand alone search term "Soros" with no time limitation. Reply Ex. A, Shah Reply Decl. ¶ 2. Smartmatic has also produced documents and agreed to other Soros-related search terms relevant to financial documents. *Id*. Until and unless Smartmatic amends its complaint to remove these statements and avers that it will never present them to a jury for any reason, OAN has every right to obtain this information from Respondents.

The complained-of statements reference Soros and Open Society as part of OAN's reporting on an issue of public concern: election malfeasance. Some of those references are fleeting and others more detailed. But many of these complained-of statements link Smartmatic to Soros and Open Society, and question the propriety of someone like Soros, who has a history of supporting left-wing political causes, in being involved in Smartmatic's administration of purportedly non-partisan elections. *See, e.g.*, Complaint at ¶¶ 93, 95-96, 99, 131. There is perhaps no better evidence of the relevance of this information than ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

Although OAN vigorously disputes Smartmatic's characterization of OAN's statements as defamatory, Smartmatic has clearly taken the position that a voting machine company's association with Soros and Open Society is defamatory (or, at minimum, part of a "disinformation campaign"), and has decided to use OAN's statements associating Smartmatic with them as a ground to sue OAN for over a billion dollars in this action. OAN is entitled to discovery from Soros and Open Society to prove the substantial truth of the complained-of statements concerning them and their connections with Smartmatic. Evidence of Soros and Open Society's ties with Smartmatic are precisely what OAN needs to defend itself in this action because Smartmatic has placed those connections squarely at issue. In that regard, OAN's document requests are designed to capture information shedding light on Smartmatic's entanglement with Soros and Open Society and are directly relevant to the substantial truth of the claims at issue. The requested information would likewise provide OAN with information relevant to challenging Smartmatic's damages model. The Court should therefore reject Soros and Open Society's futile attempt to reframe the issues, and to dictate OAN's litigation strategy in this action.

Moreover, just because one aspect of that entanglement is publicly known—Open Society board member and President Malloch-Brown's previous chairmanship at Smartmatic—does not mean that Soros and Open Society are somehow exempt from complying with the subpoenas. This is particularly true when the Response apparently concedes that a vast number of documents responsive to the subpoenas exist. *See, e.g.*, Response at 29 (alleging burden of producing Open

Society's communications with Brazil or Kenya—countries in which Smartmatic election technology has operated—regarding elections or voting equipment and technology).

Although the fact of Malloch-Brown's executive positions with both organizations is public, it is not known the extent to which Malloch-Brown secured business opportunities—and potentially funding or in-kind contributions—for Smartmatic through Soros or Open Society. And in fact, evidence produced to date demonstrate that ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████  ████  ██████████████████████  ████████  ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

It is clear that ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████

Although Respondents have represented that they conducted a search of documents evidencing funding or ownership of Smartmatic—and conceding the relevance of this issue—Respondents state that no such documents exist. *See* Response at 14, 20. But the evidence produced in the action to date suggests otherwise, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Tellingly, Respondents never disclosed the deficient search terms they used to search for documents related to funding or ownership. Respondents have instead inappropriately withheld

these documents and others that are directly relevant to the substantial truth of the claims at issue and also to challenging Smartmatic's damages model.

Respondents additionally concede the relevance of Soros and Open Society's ties to Smartmatic's technology and its vulnerability or manipulability. *See* Response at 26 (conceding as a "relevant reference to Mr. Soros" statements broadcast on OAN concerning "software used in the voting machines" that could "be manipulated to alter vote totals" and that such "software" was "tied" to "Democrat donor George Soros and the Clinton Foundation"). Respondents should therefore be compelled to produce documents pertaining to this. Contrary to the Response's inaccurate assertion otherwise, *see* Response at 27, OAN's subpoenas did request information from Soros and Open Society relating to Smartmatic's software. *E.g.*, ECF No. 2-2 at 11, No. 1:23-mc-00138-CJN (requesting, as Request No. 8 of Soros subpoena, "[a]ll Documents and Communications concerning the 2020 Election in the United States relating to voting equipment or technology, including without limitation any concerns, criticisms, threats, or vulnerabilities relating to the 2020 Election."); ECF No. 126-5 at 11 (identical language found at Request No. 9 of Open Society subpoena); *see also* ECF No. 2-2 at 10–12, No. 1:23-mc-00138-CJN (Soros Motion) (Request Nos. 1–2, 13–14); ECF No. 126-5 at 10–12 (Open Society Motion) (Request Nos. 2–3, 14–15). And indeed, OAN followed up with search terms relating to the vulnerability of Smartmatic's technology, including its hardware and software. Open Society Motion, Exhibit G, ECF No. 126-9 at 7 (OAN email correspondence with counsel for Soros and Open Society providing search terms); *see* Open Society Motion, Exhibit H, ECF No. 126-10 at 2 (listing in search query #3 the following terms, among others: malware, bugs, hack, exploit, malicious, recount, tabulation, error, glitch, compromise, switch, disappear, backdoor, attach, breach, corrupt, crash, incorrect, inaccurate, infect, and infiltrate). By Respondents' own acknowledgement that

this information is clearly relevant to the action, Respondents must produce responsive documents that would reveal any connection between Respondents and Smartmatic's technology.

> 3.    *Respondents' reliance on unrelated litigation against a different defendant has no bearing here.*

The primary contention of the Response is that a state judge's ruling in another lawsuit Smartmatic filed against a different media company with different broadcasts and different guests controls the outcome of this dispute. Not so. The lawsuit the Response focuses on—*Smartmatic USA Corp. et al. v. Fox Corp. and Fox News Network LLC*, Index No. 151136/2021 (N.Y. Sup. Ct. N.Y. Cty. filed Feb. 4, 2021) ("*Fox*")—admittedly involved the same plaintiffs as here and was a defamation case centered on reporting on the 2020 U.S. election. But the similarities with this case end there.

As an initial matter, New York charts a different path than the federal rules when it comes to non-party discovery. In New York, the scope of such discovery is limited to matters that are both "*material* and *necessary*" to the issues in the action. N.Y. C.P.L.R. § 3101(a)(4) (emphasis added). By contrast, the federal rules permit third-party discovery so long as there is "*any* possibility that the information sought *may be relevant*" to the issues. *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 124 (D.D.C. 2013) (emphasis added) (quoting *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09–0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009)). And as far as relevance is concerned, there is no materiality requirement in modern federal discovery practice, notwithstanding Respondents' suggestion.[4] *See* Fed. R. Civ. P. 26 advisory committee's

---

[4] The Response improperly recites the New York "material and necessary" standard in its legal standard section. Response at 17. The 50-year-old case Soros and Open Society cite as support— *Black v. Sheraton Corp. of America*, 47 F.R.D. 263 (D.D.C. 1969)—relies on a line of caselaw pre-dating amendments to the federal discovery rules, which amendments, *inter alia*, explicitly disclaimed "admissibility at trial" as "the test as to whether the information sought is within the scope of proper examination" because "[s]uch a standard unnecessarily curtails the utility of

note to 1946 amendment (disclaiming cases that "have erroneously limited discovery on the basis of admissibility, holding that the word 'relevant' in effect meant 'material and competent under the rules of evidence'"); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). This stark contrast between New York's and the federal rules' non-party discovery schemes militates against comparing discovery rulings between the two systems.

Moreover, the state-court complaint in *Fox* challenged only 6 unique allegedly defamatory statements that alluded to Soros or Open Society. Meanwhile, Smartmatic's complaint against OAN challenges *triple* that—13 unique statements that reference "Soros" and 5 that reference "Open Society." Complaint ¶¶ 93, 95–97, 99, 102, 104–06, 111, 113, 129, 131, 171(cc). Comparatively speaking, Soros and Open Society are thus *three times* more relevant to this action as they were in *Fox*.

Finally, the Soros and Open Society referenced in the *Fox* complaint are qualitatively different from the complained-of statements in this action: they are different statements from different hosts, different guests, and different broadcasts. *E.g.*, *compare* Complaint Against Fox at ¶ 237(d) (referencing interview with Fox guest Eddie Perez wherein guest stated, "I'm not aware of any direct connection between George Soros and Smartmatic"), *and id.* at ¶ 244 (referencing Fox host Jesse Watters' claim to viewers, "George Soros does not have any ownership stake" in Smartmatic), *with* Complaint Against OAN at ¶ 93 (complaining of OAN guest Michael Johns's statement to viewers, "Smartmatic has had *incredible ties* with some of the greater far left concerns that we have, including this Lord Mark Malloch-Brown, who's very tight with Soros, is on the

---

discovery practice." Fed. R. Civ. P. 26 advisory committee's note to 1946 amendment; *see Black*, 47 F.R.D. at 274 n.15.

Open Society's Global Board and a bunch of other Soros boards, meaning this is not some casual associate of George Soros. (emphasis added)), *and id.* at ¶ 227(d) (complaining of OAN reporter Mike Dinow's statement, "Report suggests voting machines systems *funded by George Soros were used to install a socialist regime in Venezuela* back in the early 2000s" (emphasis altered)). And of course, OAN's subpoenas likewise request different information from Fox's.

**B.      Respondents have not made a showing of undue burden in complying with OAN's subpoena.**

Because OAN has established the highly relevant nature of its document requests, the burden shifted to Soros and Open Society to adduce evidence that the subpoenas impose an "undue burden" on these billion-dollar entities. *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." (quoting *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010))); *see also id.* ("The person objecting to production has a heavy burden to show that the subpoena should not be enforced." (quoting *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012))). Their Response simply failed to do this.

Crucially, "the party opposing discovery must make a *specific showing*, supported by declaration, as to why the production sought would be unreasonably burdensome." *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (emphasis added) (citing *Pro–Football, Inc. v. Harjo*, 191 F. Supp. 2d 77, 80 (D.D.C. 2002). That is, the respondent alleging undue burden "must make a specific, detailed showing of the burden [the disputed] search would require" such as "estimated required staff hours, estimated cost, or some other specific showing." *Alexander v. FBI*, 194 F.R.D. 305, 313–15 (D.D.C. 2000); *see also Ass'n of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp.

454, 458 n.2 (D.D.C. 1993) (noting that assertions of a burden without "specific estimates of staff hours needed to comply" will be "categorically rejected").

Instead of presenting *evidence* to support an actual showing of burden, the Response provides the court with a veritable hodgepodge of irrelevant materials: a *New York Times* article, six webpages on the Internet, a court transcript from the *Fox* case, and transcripts of various OAN broadcasts (Exhibits 1; 2–4, 10–12; 6; 7–9, 13–14, respectively). *See* ECF No. 167-1 at ¶¶ 2–15. None of these materials qualifies as the sort of evidence that might support an undue burden argument. *See Alexander*, 194 F.R.D. at 313–15; *Ass'n of Am. Physicians & Surgeons*, 837 F. Supp. at 458 n.2. Likewise, the declaration of counsel attached in support of the Response makes no mention of estimated staff hours, cost, or resources required to comply with the subpoenas. *See* ECF No. 167-1 (declaration of Casey E. Donnelly).

The closest the Response comes to adducing *evidence* is a spreadsheet that purports to "break out" OAN's proposed search terms. ECF No. 167-7. The spreadsheet—which was not presented to OAN at any point during the meet-and-confer process and which OAN is seeing for the first time—misrepresents the one-page list of search terms OAN proposed. OAN proposed *four* search queries, requiring Soros and Open Society's e-discovery vendor to run just *four* searches for responsive materials. *See* ECF No. 126-10 at 2 (list of search terms as proposed by OAN). The Boolean search operators "OR" and "AND" do not—contrary to opposing counsel's suggestion—require Soros and Open Society run 2,595 separate searches. ECF No. 167-7 at 57. Instead, much in the same way an advanced Westlaw search is run, the computer takes care of the work. All that is required of Respondents is to insert the four queries. Running search queries with Boolean connectors is standard litigation practice. Moreover, Respondents' work in "breaking out" these search strings demonstrates that Respondents have the capability to run a search of responsive

documents, yet have not even produced a hit report on what even one of these search terms yields. This is a far cry from the "undue burden" Respondents are required to demonstrate. *See Association of Am. Physicians & Surgeons*, 837 F. Supp. at 458 n.2.

Any suggestion of undue burden with respect to four narrow search queries washes away upon consideration of Soros and Open Society's vast resources. Collectively, Respondents' wealth outstrips the annual GDP of Afghanistan, Liberia, and Belize *combined*.[5] Soros and Open Society's resources are a factor this Court may consider in evaluating their burden objections and weigh against a finding that it would be unduly burdensome for Respondents to produce these documents. *See In re Denture Cream*, 292 F.R.D. at 123 (citing *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007)).

Nevertheless, in an effort to accommodate Respondent's refusal to run OAN's proposed four search strings, OAN requests that in the alternative, this Court simply compel Respondents to run the singular search term "Smartmatic" and produce all documents and communications that hit on this term. Such a search would certainly give OAN the information it requests and would alleviate any of Respondents' purported issues with running "broken out" searches. By Respondent's own reasoning, such a search would be simple to run and Respondents have produced no evidence demonstrating that producing documents concerning Smartmatic would be unduly burdensome. *See Alexander*, 194 F.R.D. at 313–15 (requiring a "a specific, detailed

---

[5] *See Fact Sheet: The Open Society Foundations and George* Soros, OPEN SOC'Y FUNDS. (Oct. 12, 2023) ("The Open Society Foundations have more than $22 billion in assets, and is one of the world's largest private philanthropic funds."), https://www.opensocietyfoundations.org/newsroom/open-societyfoundations-and-george-soros [https://perma.cc/JUC7-2RQW]; *George Soros*, FORBES (Dec. 1, 2023) (identifying Soros's net worth as $6.7 billion), https://www.forbes.com/profile/georgesoros/?sh=6bba26cc2024 [https://perma.cc/ALY5-S8L6]; *GDP (Current US$)*, WORLD BANK, https://data.worldbank.org/indicator/NY.GDP.MKTP.CD [https://perma.cc/J8PP-PYRF].

showing of the burden" such as "estimated required staff hours, estimated cost, or some other specific showing").

The remainder of Soros or Open Society's burden objections are meritless, even excusing the Response's lack of supporting evidence. For instance, Respondents raise, for the first time, the objection that Malloch-Brown used a Smartmatic email address for several years, purportedly making it burdensome to comply with Request No. 11 of the Soros subpoena, which calls for "Documents and Communications between the Open Society Foundations, or any of Your organizations, and Smartmatic Entities or individuals working on behalf of Smartmatic Entities, including without limitation Lord Mark Malloch-Brown and Peter V. Neffenger." ECF No. 126-4 at 11; *see* Response at 31. Malloch-Brown, according to Respondents, used his Smartmatic email account "for communications that had nothing to do with Smartmatic, such as OSF Global Board business." Response at 31. Respondents do not provide evidence showing this to be the case, and this assertion should be treated with skepticism given that Malloch-Brown used non-Smartmatic email addresses. In any event, Malloch-Brown's deliberate choice to use his Smartmatic email address to work on business related to Open Society should carry the presumption that this work was also related to Smartmatic, and only demonstrates the close connection between the two entities, justifying OAN's need for this information.

Respondents' issues with other requests and terms are likewise without merit. In an effort to resolve Respondents' objections without the need for Court involvement, OAN even narrowed its requests for production by providing four narrow search strings that would necessarily limit the universe of documents Respondents would need to produce. OAN further explained the significance and relevance of each of the search terms that counsel for Soros and Open Society inquired about, tying each of these terms to issues in the complaint, with citations. Open Society

Motion, Exhibit G, ECF No. 126-9 at 4–6. The Response pretends these efforts never took place. *E.g.*, *compare* Response at 29 (questioning the relevance of search term "Ex-Cle"), *with* ECF No. 126-9 at 5 (explaining, at request of Respondents' counsel, that "Ex-Cle is a company in Venezuela that also was involved in elections and worked with Smartmatic to provide election services, with Ex Cle often providing biometric identification and Smartmatic providing hardware/software. Given connections between Smartmatic and Excle, this is relevant to the complained-of statement concerning 'voting machines systems funded by George Soros were used to install a socialist regime in Venezuela back in the early 2000s.'" (quoting Complaint ¶ 95 and citing *id.* ¶¶ 131, 184)).

The Response also incorrectly claims that the subpoenas' requests for production contain "no date limitation." Response at 28; *see id.* at 30. But the subpoenas plainly state that "the relevant time period for these Requests for Production is from January 1, 2011 to the present," given the extensive history of Respondents' involvement with Smartmatic. ECF No. 2-2 at 10, No. 1:23-mc-00138-CJN; ECF No. 126-5 at 10 (same).

OAN's subpoena is therefore not overly broad, especially in light of the ways OAN has worked to address Respondents' assertions of burden and provided narrow search terms that fit on one page.[6] The Court should overrule Respondents' burden and overbreadth objections and grant the Motions.

---

[6] Soros and Open Society also strangely criticize OAN for omitting from the Motions the language of each and every request for production in the subpoenas. But OAN's Motions attached the requests and Respondents' objections pursuant to Local Civil Rule 26.2(d) and cited them throughout. Exhibit D, ECF No. 2-4, No. 1:23-mc-00138-CJN (Soros's Responses and Objections); Exhibit E, ECF No. 126-7 (Open Society's Responses and Objections); *see* ECF No. 2, No. 1:23-mc-00138-CJN (Soros Motion); ECF No. 126-1 (Open Society Motion).

**C.      OAN is entitled to attorneys' fees.**

OAN has dutifully attempted to engage in good-faith negotiations with Respondents concerning the document requests contained in the subpoenas. At every step of the way, however, it has been hamstrung by Soros and Open Society's failure to cooperate, necessitating the filing of the Motions.

As an example, Respondents' counsel, though conceding that certain of OAN's requests were relevant, nevertheless strung OAN along for months, while it was clear that it was never going to comply with OAN's subpoena and produce any responsive documents. Though now Respondents represent that they did a search for certain documents related to Respondents' funding and ownership of Smartmatic, they had never even informed OAN of this pertinent information during the months-long meet-and-confer process. If they had, OAN certainly would have requested information concerning the search terms used to conduct this search. This is especially egregious because Respondents now use this to represent that their search resulted in zero documents that relate to Respondents' funding or ownership of Smartmatic. *See* Response at 8, 33. But as described above, OAN is aware of documents that demonstrate ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ It is therefore either a misrepresentation to state that there are no responsive documents, or a demonstration that Respondents never exercised basic due diligence in complying with OAN's subpoenas and conferring with OAN in good faith.

Respondents' failure to provide OAN with pertinent information during the conferral process has likewise not stopped there, as it took OAN filing these Motions to even see Respondents' "broken out" search strings that they used to excuse their noncompliance with OAN's subpoena. And notwithstanding OAN's repeated request for evidence, including hit reports, of Respondents' asserted undue burden, Respondents refused to provide OAN with any meaningful proof of their purported burden.[7] *See* Open Society Motion, Exhibit G, ECF No. 126-9 at 2–3 (email correspondence between counsel).

Nor should OAN be required to pay Respondents' attorneys' fees and expenses. OAN has repeatedly explained the relevance of the information requested, going so far as to justify—by numerous citations to Smartmatic's complaint—every search term's relevance questioned by Respondents. Open Society Motion, Exhibit G, ECF No. 126-9 at 4–6. Respondents cannot say with any credibility that OAN "never offered any valid basis for its discovery requests." *See* Response at 34. Moreover, to the extent Respondents believe that this Court should follow the example of the New York court in *Fox*, Respondents should be denied all fees and costs. *See* ECF No. 167-4 at 44, *Fox* ("To the extent that, although not addressed at argument, that the subpoenaed individuals seek costs and expenses in defending this motion, that application or that motion as to that aspect of the motion is denied in all respects.")

Soros and Open Society's recalcitrant conduct and gamesmanship amount to bad faith, and for this reason the Court should award OAN its attorneys' fees incurred in connection with the filing of the Motions.

---

[7] Nor have Respondents' attempts at "gotcha" ceased, as evidenced by the Response's accusation that OAN filed its Motions in violation of a Court order concerning leave-of-court for discovery motions, *see* Response at 34 n.8—a rule no party to this case has understood as applicable to third-party subpoena motion practice when the third-party is not represented by Smartmatic's counsel.

## III.    CONCLUSION

For these reasons, the Court should grant OAN's Motions and order Soros and Open Society to produce documents responsive to the subpoenas using OAN's proposed search terms, or in the alternative, all documents that hit on the term "Smartmatic," within 7 days.

Dated: January 22, 2024.                          Respectfully submitted,

By: */s/ R. Trent McCotter*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**<u>BOYDEN GRAY & ASSOCIATES</u>**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of January 2024, the foregoing was filed with the

Clerk of the Court using the CM/ECF system, which will electronically mail notification of the

filing to all counsel of record who are registered ECF users.

*/s/ R. Trent McCotter*
R. Trent McCotter